UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
BOBETTE M. PRICE,                                           :
                                                            :
                                                            :
                                      Plaintiff,            :
                                                            :       14-CV-9164 (JPO)
            -v-                                             :
                                                            :       OPINION AND ORDER
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                                      Defendant.            :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

   Plaintiff Bobette Price brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability benefits. The Commissioner has moved and Price has cross-moved for judgment on the pleadings. (Dkt. Nos. 12, 14.) For the reasons that follow, Price's motion is granted and the Commissioner's motion is denied.

I.   Backgrounds

   A.   Procedural History

   Price filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 23, 2011, alleging disability beginning April 10, 2010. (R. 12.) Her application was denied on November 22, 2011. (R. 12.) Price requested a hearing, and an administrative law judge ("ALJ") conducted an initial hearing on December 3, 2012, obtained additional medical records, and held a further hearing on June 5, 2013. (R. 12.) On July 25, 2013, the ALJ denied Price's applications, concluding that Price is not disabled within the meaning of the Social Security Act ("SSA"). (R. 23.) Price requested review of the ALJ's

decision, which the Social Security Appeals Council denied. (R. 1.) She filed this suit on November 18, 2014. (Dkt. No. 1.)

  **B.**  **Factual History**

Price is sixty-two years old. (*see, e.g.*, R. 552.) She has an associate's degree and has two children who live in Atlanta, with whom she has a good relationship. (R. 44-45.) From 2006 to 2010, Price worked for a labor union's phone bank. (R. 22, 80-81.) The date on which she alleges her disability began is April 10, 2010. (R. 12.) Around that time, Price suffered a seizure and an aneurism when she ran out of medication. (R. 83, 369.) She subsequently started a new anti-seizure medication, Keppra, which she preferred "because there are no side effects and no interactions with her other medications." (R. 369.)

Over the ensuing six years, Price has been seen by at least fifteen doctors or nurse practitioners, including those evaluating her as part of her disability claim. Among those medical professionals, there is broad consensus that Price suffers from chronic obstructive pulmonary disease, Hepatitis C, asthma, depression, and substance abuse. (R. 14; *see, e.g.*, R. 345, 382, 433-43; Plaintiff's Cross-Motion for Judgment on the Pleadings ("Pl.'s Mot.") at 3, 5.) According to Price, Dr. Debora Shpolyansky and Dr. Peter Marcus have been her treating physicians, while Dr. Kingsley Nwokei and Nurse Practitioners Esther Aguirre and Briana Morrison have been her treating mental health professionals. (Pl.'s Mot. at 3-9.)

Price testified before the ALJ on December 3, 2012, and June 5, 2013. (Pl.'s Mot. at 1-2; R. 37, 80.) At the first hearing, Price testified that she left her job with the labor union after her seizure and aneurism, and that she could no longer work because it is "very stressful" and she has "high blood pressure." (R. 83-84; *see* Pl.'s Mot. at 2.) At the second hearing, she added that she could no longer work due to her seizures, high blood pressure, severe depression, and

asthma. (R. 42-50.) Though the seizures are controlled by medication, she testified that the medication makes her too sleepy to work. (R. 43.) She testified that she is also on Methadone and other medications, which make her dizzy. (R. 55-56, 64.)

The ALJ issued a decision denying Price's claim on July 25, 2013. The ALJ found that Price met the SSA's insured status requirements, that she had not engaged in substantial gainful activity since the alleged onset of her disability, and that she had "hepatitis C, chronic obstructive pulmonary disease (COPD), asthma, depression, and polysubstance abuse." (R. 14.) The ALJ also found, however, that Price did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 15.) Additionally, the ALJ determined that Price retained the residual functional capacity ("RFC") to perform sedentary work, although Price can only "perform unskilled work and some semi-skilled work." (R. 17.) Such work included Price's past relevant work as a telephone solicitor. (R. 22.)

The ALJ based this decision largely on Price's testimony, the medical records and the views of Dr. Lathan, the FEGS examiner, and Dr. Przbyla, the state medical consultant. (R. 22.) He found Price's claimed dizziness and fatigue from her medications to be not credible, in light of medical records containing "no reports of side effects." (R. 19.) Similarly, the records showed that her other physical impairments were largely under control, and that Price was "relatively asymptomatic, in terms of both reported symptoms and findings upon examination," so long as she took her medication. (R. 18.) Price's reported mental health symptoms and her mental health records both indicated "moderate symptoms." (R. 20.) The ALJ credited those doctors whose testimony was consistent with the objective evidence and their own doctors' notes. (R. 21-22.) He also discounted the views of other medical professionals—including Dr.

Shpolyansky—who proposed limitations that the ALJ concluded were inconsistent with their own medical records and reports. (R. 20-21)

## II. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks and citations omitted). A court may not substitute its judgment for that of the Commissioner, "even if it might justifiably have reached a different result upon *de novo* review." *Downes v. Colvin*, No. 14-CV-7147, 2015 WL 4481088, at *6 (S.D.N.Y. July 22, 2015) (quoting *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011)). Accordingly, this Court determines only whether the ALJ's decision was based on sufficient evidence and applied the proper legal standards. The Court does not decide whether Price is in fact disabled.

## III. Discussion

### A. Legal Standards for Disability Claims

As relevant here, to establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers, in turn, whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a "severe" impairment as defined in Social Security Administration's regulations; (3) the claimant has an impairment listed in Appendix I of the regulations; (4) the claimant has a residual functional capacity to perform his past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Sotomayor, J.); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Id.* If the ALJ determines after the first three steps that the claimant has a "severe" impairment listed in Appendix I, she will consider the claimant disabled without proceeding to steps four and five. *Id.* In conducting its analysis, the ALJ has an affirmative duty to "develop the record." *Swiantek v. Comm'r of Social Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

When making SSD determinations, ALJs are bound by the "treating physician rule." *Rosa*, 168 F.3d at 78-79 (citing 20 C.F.R. § 404.1527(d)(2)). That rule requires ALJs to give the opinion of a claimant's treating physician "controlling weight" so long as it is well supported by medical findings and not inconsistent with other substantial evidence. *Id.* at 78-79. In the Second Circuit, an ALJ must "explicitly consider" four factors to reject the opinion of the treating physician: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370,


375 (2d Cir. 2015) (per curiam) (alteration in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  An ALJ cannot reject a treating physician's report by "substitut[ing] his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Aronis v. Barnhart*, No. 02-CV-7660, 2003 WL 22953167, at *5 (S.D.N.Y. Dec. 15, 2003) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *see Greek*, 802 F.3d at 375.  When an ALJ opts not to give a treating physician's opinion controlling weight, the ALJ must explain how much weight the opinion deserves.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)).

  **B.**  **Analysis of Price's Claim**

  Price challenges the ALJ's decision on the grounds that it (1) improperly discounted the views of treating physicians and nurse practitioners, and (2) is unsupported by substantial evidence.  Because the Court remands the case to the Commissioner on the first ground, it does not reach the second.

  The Court begins and ends with the ALJ's failure to consider the views of Dr. Peter Marcus.  One of Price's main treatment facilities was the Claremont Family Health Center, where Dr. Debra Shpolyansky—acknowledged by the ALJ as a treating physician—worked.  (Gov't Mem. at 3-5, 11, 14-15; R. 20.)  In addition to Dr. Shpolyanky's statements, Nurse Practitioner Lucy Palomino, "who provides care to [Price] through the Claremont Family Health Center," submitted a statement on May 30, 2013.  (R. 20; *see* R.614-21.)  That statement was resubmitted over the signature of Dr. Marcus on July 2, 2013.  (R. 630-38; *see* Pl.'s Mem. at 5, 14; Gov't Mem at 14 n.4.)

The statement alleges that the signer has treated Price "[s]ince 2008." (R. 631.) It diagnoses Price with asthma, hypertension, seizures, anemia, depression, anxiety, and Hepatitis C. (R. 631-2.) These conditions cause Price chronic pain, including back pain and neuropathic pain, often interfering with her attention and concentration. (R. 631-2.) She has, the report states, a reduced range of motion, joint instability, a positive straight leg, and medications whose side effects may affect her work. (R. 631-32.) The statement concludes that Price can sit continuously for no more than an hour while elevating her legs to waist level, and that she can only sit for two hours during a work day. (R. 632-33.) Similarly, she needs to stand or walk for fifteen minutes after each hour of sitting, but can only walk for thirty minutes, and cannot stand or walk for more than two hours during a work day. (R. 632-34.) After that time, she must lie down. (R. 633.) Altogether, Price must rest more often than every two hours, though not for more than an hour at a time. (R. 634.) The statement also suggests that Price should not carry more than five pounds, or ten pounds from time to time, and that she is likely to miss more than three days of work a month. (R. 635, 637.)

In his opinion of July 25, 2013, the ALJ indicated that he understood this statement to come from Palomino. (R. 20-21.) He did so notwithstanding the ALJ's receipt of Dr. Marcus's statement. (R. 28.) Accordingly, the ALJ gave it "little weight . . . as it is unsupported by the evidence." (R. 21.) In particular, he noted, the record showed that Palomino began providing care to Price in May 2012, and that her treatment records showed "no ongoing complaints" consistent with "the type of significant limitations" in Palomino's statement. (R. 21.)

Price argues that Dr. Marcus is a treating physician, and that the ALJ failed to evaluate his statement through the lens of the treating physician rule. (Pl.'s Mem. at 14.) She is correct. The ALJ's opinion does not reflect consideration of the nature or length of care provided by Dr.

7

Marcus, rather than Palomino. (*Cf.* R. 21.) And the ALJ did not start from the assumption that Dr. Marcus's statement was entitled to controlling weight, as befits a treating medical source. (*Cf.* R. 20.) *Rosa*, 168 F.3d at 78-79; *see Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (differentiating between the weight of a nurse practitioner's opinion and a treating physician's opinion). He did not mention the statement from Dr. Marcus at all. Nor does the Commissioner, in her briefing here, respond to Price's argument or discuss Dr. Marcus's statement beyond a footnote mentioning its existence. (Gov't Mem. at 14 n.4.)

The ALJ remains free to discount the views of a treating physician if it is inconsistent with substantial evidence. *Rosa*, 168 F.3d at 78-79; *see* 20 C.F.R. § 404.1527(c)(2)). Nonetheless, it is reversible error for an ALJ to omit reasons for dismissing the views of a treating physician. *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). That requirement exists, "in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable." *Snell*, 177 F.3d at 134.

To be sure, Dr. Marcus's statement was identical in substance to that of Palomino. And, while the Commissioner has made no harmless error argument (or any direct argument on this point), harmless error analysis applies "in some circumstances" in treating physician rule cases. *Otanez v. Colvin*, 14 Civ. 8184, 2016 WL 128215, at *11 n.7 (Jan. 12, 2016). An error in application of the treating physician rule is harmless if "application of the correct legal standard could lead to only one conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (quoting

*Schaal*, 134 F.3d at 504) (applying a harmless error rule where the excluded physician report was "largely identical" to another report *by the same doctor* that the ALJ considered).  Here, however, the ALJ discounted the statement's weight in large part because it was inconsistent with *Palomino's* treatment records.  (R. 21.)  The Court cannot say that the ALJ would reach the same conclusion with regard to Dr. Marcus's records.  *See Greek*, 802 F.3d at 375 (requiring an ALJ to explicitly consider the treating physician's nature and length of treatment and whether the treating physician is a specialist before rejecting the opinion).  As the Second Circuit has stated, consideration of lay testimony that is similar to a treating physician's report "is not a substitute for proper consideration of a treating physician's medical opinion.  After all, [Social Security Administration] regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such opinions 'controlling weight' in all but a limited range of circumstances."  *Greek*, 802 F.3d at 376 (reversing a district court that found exclusion of a treating physician's report harmless because the record contained similar information elsewhere).  This case does not fall within the ambit of the narrow harmless error doctrine in this area of law.

Indeed, the record before this Court contains a paucity of information as to Dr. Marcus's course of care for Price.  On the one hand, the fact that he signed a statement originally signed by Palomino might mean that he is simply a supervisor of hers, with no independent treatment experience.  In light of Dr. Marcus's scant appearances in the administrative record, his involvement may be so attenuated that he is not ultimately counted a treating physician.  On the other hand, the statement on its face avers that Dr. Marcus's care for Price began years before Palomino's.  (*Compare* R. 631 (stating that Dr. Marcus had contact with Price since 2008) *with* R. 21 (noting that Palomino began treating Price in May 2012).)  Perhaps he has played a significant behind-the-scenes or specialist role in her care.  The record is not clear.

The paucity of information on this point does not, however, permit an affirmance. Rather, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79). That requirement stems from the ALJ's duty to "affirmatively develop the record." *Lamay v. Comm'r of Social Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *see Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (explaining the "duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits" (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004))). The ALJ may not dismiss the views of an alleged treatment physician *sub silentio*, without inquiry into the basis of those views and an explanation for the decision on the record.

### IV. Conclusion

For the foregoing reasons, Price's motion is granted and the Commissioner's motion is denied. The case is hereby remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 12 and 14.

SO ORDERED.

Dated: March 31, 2016
   New York, New York

_____
J. PAUL OETKEN
United States District Judge